UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MARIA SIEROTOWICZ and
STANISLAW SIEROTOWICZ,

                Plaintiffs,

      - against-                        **04-CV-3148 (NGG)(LB)**

NEW YORK CITY HOUSING AUTHORITY,

                Defendant.
-------------------------------------------------------X
MARIA SIEROTOWICZ and
STANISLAW SIEROTOWICZ,

                Plaintiffs,

                                 **04-CV-3886 (NGG)(LB)**

      - against-

LOS SURES MANAGEMENT CO.,

                Defendant.
-------------------------------------------------------X
MARIA SIEROTOWICZ and
STANISLAW SIEROTOWICZ,

                Plaintiffs,

                                 **04-CV-3887 (NGG)(LB)**

      - against-

ST. NICHOLAS NEIGHBORHOOD
PRESERVATION CORP.,

                Defendant.
-------------------------------------------------------X
MARIA SIEROTOWICZ and
STANISLAW SIEROTOWICZ,

                Plaintiffs,

                                 **04-CV-3888 (NGG)(LB)**

      - against-

NORTH BROOKLYN DEVELOPMENT CORP.;
PEOPLE'S FIREHOUSE,

                Defendants.
-------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

## REPORT AND RECOMMENDATION

Plaintiffs Maria Sierotowicz (Maria S.) and her father, Stanislaw Sierotowicz (Stanislaw S.),[1]

appearing *pro se*, bring these four actions pursuant to the Fair Housing Act and other federal laws.

Defendants in each action move for summary judgment pursuant to Fed. R. Civ. P. 56.[2] The

Honorable Nicholas G. Garaufis, United States District Judge, referred defendants' summary

judgment motions to me for a Report and Recommendation (R&R) pursuant to 28 U.S.C. § 636(b).

The motions are consolidated for the purposes of this R&R. It is respectfully recommended that

defendants' motions should be granted for the following reasons.

## BACKGROUND

At the outset, the Court questions whether Stanislaw S. had any understanding of this

litigation or his role in it. At his deposition, he admitted that he cannot speak, read or write English.

*See* Deposition Transcript of Stanislaw S. dated October 15, 2007 (SS Dep.) at 8:9-17.[3]

---

[1] Stanislaw S. died on July 30, 2008. *See* Maria S.'s Report dated August 11, 2008, attaching a copy of his death certificate. The Court offers Maria S. its condolences. Fed. R. Civ. P. 25(a)(1) governs the substitution of deceased parties: "If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed." As this Report recommends dismissal of these actions, the rule regarding substitution is cited for plaintiff's information. However, a non-attorney administrator or executor of an estate may not proceed *pro se* in litigating an interest specific to the estate, *see Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997). Therefore, Maria S. or another family member who is not an attorney, could not act on behalf of Stanislaw S.'s estate without counsel.

[2] Defendants' motions include the required notice to *pro se* litigants under Local Rule 56.2.

[3] Plaintiffs were deposed by all the defendants on the same dates. Defendants retained the services of a Polish interpreter for Stanislaw S.'s deposition.

Maria S. is the driving force behind this litigation and the Court has repeatedly warned Maria S. that she cannot represent her father in these proceedings. *See Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) ("because *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause."). However, since Stanislaw S. signed all the papers filed with the Court and did appear at his deposition, the Court shall consider both plaintiffs' claims.

## A. Sierotowicz v. New York City Housing Authority, 04-CV-3148 (NGG)(LB)

On July 2, 2004, plaintiffs, residing at 189 Ross Street, Apartment 3C, in Brooklyn, filed this action alleging that defendant New York City Housing Authority (NYCHA) and its subdivisions: the Leased Housing Department, Office of Inspector General Fraud Unit and Office of Administrative Hearings, committed housing discrimination.[4] Specifically, plaintiffs allege that defendants discriminated against them based on familial status, sex and a perceived mental disability in violation of the Fair Housing Act. Plaintiffs also allege fraud and violations of the federal criminal law and the False Claims Act.

The following facts are not disputed. Maria S., born September 27, 1947, has resided in a Section 8 subsidized apartment at 189 Ross Street since June 1984 when she moved in with her mother, Anna Sierotowicz, who died on November 29, 1990. Thereafter, Maria S. continued to reside in the Section 8 subsidized apartment. In September 1984, Stanislaw S., born April 30, 1919, joined Maria S. and his wife in the apartment and was added to the Section 8 Certificate of Family Participation Number 46154. However, Stanislaw S. returned to Poland two years later and lived there until August 2000, when he returned to the United States. Stanislaw S. has since resided with Maria S. at 189 Ross Street. Maria S. requested permission from NYCHA for Stanislaw S. to join

---

[4] Plaintiffs commenced the action in the United States District Court for the Southern District of New York (SDNY) and that Court transferred the case here on July 23, 2004.

3

her Section 8 household. *See* Compl. at 9, Supp. Pleading, Ex. B 4, 5. On February 21, 2003, NYCHA notified Maria S. that the landlord objected to her request for permission to add her father and NYCHA denied her request based on the landlord's objection and because it would cause overcrowding in a one bedroom apartment based on Section 8 regulations.

Thereafter, Maria S. was served with a Notice of Termination of Section 8 subsidy alleging that she was violating Section 8 regulations by allowing her father to reside in the subsidized apartment. Maria S. requested a hearing to challenge the termination of her benefits and the hearing officer ruled in her favor; the Section 8 subsidy was continued. Maria S. filed two discrimination complaints with the United States Department of Housing and Urban Development (HUD) and on September 21, 2003, Maria S. received a dismissal and right to sue notice on the first HUD complaint. On October 29, 2004, plaintiffs filed a supplemental pleading adding allegations against NYCHA concerning the Section 8 program and alleging federal criminal violations for fraud and conspiracy.

*Procedural History*

On May 6, 2005, defendant moved to dismiss the complaint and the supplemental pleading. On March 27, 2006, the Court granted defendant's motion to dismiss the complaint for failure to state a claim and dismissed the complaint in its entirety. Specifically, the Court dismissed the criminal causes of actions alleging conspiracy and fraud as private individuals do not have the right to initiate prosecutions for violations of federal criminal statutes. The Court also dismissed the housing discrimination, fraud and *qui tam* claims and denied plaintiffs leave to further amend the complaint. On January 25, 2007, the United States Court of Appeals affirmed the dismissal of the criminal charges, fraud claims, the *qui tam* action and the denial to further amend the complaint, but

4

remanded the housing discrimination claims because "[u]nder *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506 (2002)], the complaint adequately pleads a violation of the pertinent anti-discrimination laws." *See Sierotowicz v. NYCHA*, Mandate No. 06-2041-cv (2d Cir. Jan. 25, 2007).

## B. Sierotowicz v. Los Sures Management Co., 04-CV-3886 (NGG)(LB)

On September 3, 2004, plaintiffs filed this action, one of three, alleging that defendants New York State Division of Housing and Community Renewal (DHCR) and Los Sures Management Company (Los Sures), a community organization located in Brooklyn, committed housing discrimination in violation of the Fair Housing Act. The following facts are not disputed. On August 23, 2001, plaintiffs applied for an apartment with Los Sures. At the time they filed the application with Los Sures, plaintiffs allege that they were not informed that they were being placed on a waiting list, the number assigned to their application or when they would be called for an apartment. Maria S. alleges that she made numerous telephone calls seeking the status of their application without obtaining any information. Plaintiffs filed a housing discrimination complaint with HUD on September 26, 2003 and received a right to sue notice on October 6, 2003. As a result of the HUD complaint, plaintiffs learned sometime in December 2003, that their application was assigned a number on a waiting list. To date, plaintiffs have not been contacted by Los Sures regarding their application for an apartment.

*Procedural History*

By order dated June 14, 2005, the Court dismissed the complaint against the DHCR,[5] a state agency, as barred under the Eleventh Amendment, but allowed plaintiffs to file a *qui tam* (or False Claims Act) action against the state agency. Plaintiffs filed an amended complaint and also appealed

---

[5] As the complaints against DHCR were dismissed, DHCR has been removed from the captions.

5

the dismissal of the complaint against the DHCR. On March 26, 2006, the Court of Appeals dismissed the appeal. *See Sierotowicz v. New York State DHCR, et al.,* Mandate No. 05-4762-cv (2d Cir. Mar. 26, 2006). By order dated April 9, 2007, the Court granted DHCR's motion to dismiss the *qui tam* action and other claims, but allowed the housing discrimination claims to proceed against Los Sures and the other housing organizations as set forth below.

### C. Sierotowicz v. St. Nicholas Neighborhood Preservation Corp., 04-CV-3887 (NGG)(LB)

On September 3, 2004, plaintiffs filed the second complaint alleging that defendants DHCR and St. Nicholas Neighborhood Preservation Corporation (St. Nicholas) committed housing discrimination in violation of the Fair Housing Act. The following facts are not disputed. Plaintiff Maria S. alleges that on February 19, 1999, she applied for housing with St. Nicholas, a non-profit community organization located in Brooklyn, and was assigned Log No. 11. Maria S. listed her father Stanislaw S. as a co-applicant. In May 1999, St. Nicholas offered plaintiff a two bedroom apartment but Maria S. declined because NYCHA would not transfer her Section 8 subsidy as she was living by herself at that time. On June 30, 2003, defendant St. Nicholas offered Maria S. another two bedroom apartment but Maria S. again declined, now preferring to have two one-bedroom apartments to accommodate both herself and her father who was living with her at the time. Having declined two offers, St. Nicholas removed Maria S. from its waiting list. On September 8, 2003, plaintiffs filed a housing discrimination complaint with HUD and received a right to sue notice on March 11, 2004.

*Procedural History*

By order dated June 14, 2005, the Court dismissed the complaint against the DHCR and the

non-housing discrimination claims against St. Nicholas. By order dated June 21, 2007, the Court denied defendant St. Nicholas's motion for judgment on the pleadings concluding that plaintiffs' complaint alleged sufficient facts.

### D. Sierotowicz v. North Brooklyn Development Corp. & The People's Firehouse, 04-CV-3888 (NGG)(LB)

On September 3, 2004, plaintiffs filed the third complaint alleging that defendants DHCR, North Brooklyn Development Corporation (North Brooklyn) and the People's Firehouse, two community organizations located in Brooklyn, committed housing discrimination in violation of the Fair Housing Act.

The following facts are not disputed. On December 7, 2001, Stanislaw S. applied for senior citizen housing with North Brooklyn in response to a local newspaper advertisement seeking applications for housing at the Huron Street Apartments. Compl. at 4. Stanislaw S. was not offered an apartment, but instead was placed on a waiting list. Compl. at 4. The advertisement announced "32 brand new large studio apartments" for those with annual incomes in the range of "$9,700 to 23,650." Compl., Exhibit B. Separately, Maria S. applied to North Brooklyn for Section 8 housing. Compl. at 4. On September 8, 2003, plaintiffs filed a housing discrimination complaint with HUD against North Brooklyn and the People's Firehouse and received a right to sue notice on April 30, 2004. Compl. at 5. In a supplemental pleading filed on March 28, 2007, plaintiffs allege that the People's Firehouse offered Stanislaw S. a studio apartment in July 2006 and again on November 2006, but that the apartments offered "did not fit his recent health problems" and that it did not offer plaintiff Maria S. any housing. *See* Supp. Pleading at 3. On March 2, 2007, plaintiffs filed a housing discrimination complaint against People's Firehouse with HUD. *See id.* at 5.

*Procedural History*

By order dated June 14, 2005, the Court dismissed the complaint against the DHCR and all the claims other than the housing discrimination claims against North Brooklyn and People's Firehouse.

## **STANDARD OF REVIEW**

### I.    **Summary Judgment Standard**

Defendants now move for summary judgment and plaintiffs have opposed the motions. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it is one that "might affect the outcome of the suit under the governing law." *Jeffreys v. City of New* York. 426 F.3d 549, 553 (2d Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Jeffreys,* 426 F.3d at 553 (quoting *Anderson*, 477 U.S. at 248 ); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleadings; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific

facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita*, 475 U.S. at 586-87 (1986). In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. *Anderson*, 477 U.S. at 257.

Although the Court is obliged to "read [the *pro se* plaintiffs'] papers liberally, and will interpret them to raise the strongest arguments that they suggest," *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)), "[c]onclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." *Niagara Mohawk Power Corp. v. Jones Chemical, Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)); *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (mere speculation and conjecture are insufficient to avoid summary judgment). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Anderson*, 477 U.S. at 252.

The Court addresses only plaintiffs' housing discrimination claims under the Fair Housing Act as all other claims have been dismissed.

## II.    Fair Housing Act

The Fair Housing Act (FHA or Act) was enacted by Congress to "provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. The Act prohibits all practices which deny housing to persons because of a handicap, race, color, religion, sex, familial status, or national origin. 42 U.S.C. §§ 3604-3605. To establish a prima facie case of discrimination, plaintiffs must show that: (1) they are members of a protected class, (2) they sought and were qualified to rent an apartment, (3) they were denied the opportunity to rent the apartment,

9

and (4) the apartment remained available thereafter. *See Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003) (citing *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1038 (2d Cir. 1979)).

Once plaintiffs have established a prima facie case of housing discrimination, the burden shifts to defendants to assert a legitimate, nondiscriminatory reason for the challenged action. *Id.; see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973) (setting forth the burden-shifting framework). If defendants make such a showing, the burden shifts back to plaintiffs to demonstrate that the rationale is pretextual, *i.e.*, that the reason, at least in part, was motivated by discrimination. *Robinson*, 610 F.2d at 1042 (plaintiffs need not demonstrate that race was the sole reason they were denied housing, only that it was a motivating factor in defendant's decision).

The FHA applies not only to intentional housing discrimination, *i.e.*, "disparate treatment," but to all policies or practices which have a discriminatory effect, *i.e.*, "disparate impact," even absent discriminatory intent. *Fair Housing in Huntington Committee Inc. v. Town of Huntington, N.Y.*, 316 F.3d 357, 366 (2d Cir. 2003). Under a disparate impact theory, "a prima facie case is established by showing that the challenged practice of the defendant actually or predictably results in ... discrimination." *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 934-36 (2d Cir.), *aff'd*, 488 U.S. 15 (1988), *reh'g denied*, 488 U.S. 1023 (1989). Once a plaintiff establishes a prima facie case, the burden shifts to the defendant "to prove that its actions furthered, in theory and in practice, a legitimate, bona fide ... interest and that no alternative would serve that interest with less discriminatory effect." *Id.* at 936 (citing *Resident Advisory Bd. v. Rizzo*, 564 F.2d 126, 148-49 (3d Cir. 1977)); *see also Khalil v. Farash Corp.*, 452 F.Supp.2d 203, 207 (W.D.N.Y. 2006), *aff'd*, 277 Fed. Appx. 81 (2d Cir. 2008).

10

**A. <u>Sierotowicz v. New York City Housing Authority</u>, 04-CV-3148 (NGG)(LB)**

In Complaint No. 04-CV-3148,[6] plaintiffs allege that NYCHA discriminated against them based on familial status, gender and perceived mental disability in violation of the FHA. Specifically, plaintiffs allege discrimination based on defendant's unsuccessful attempt to terminate Maria S.'s Section 8 subsidy and NYCHA's failure to approve Stanislaw S.'s application to join the Section 8 household as an authorized family member. Furthermore, plaintiffs challenge the Section 8 occupancy policy and allege that NYCHA's failure to allow Stanislaw S. to obtain his own Section 8 subsidy and his own apartment is discrimination based on familial status and gender. *See* Compl. at 22-23, 25. Plaintiffs contend that NYCHA previously acknowledged Stanislaw S. as a Section 8 recipient in 1986 and 1987, *see* Supplemental Pleading, Ex. B (NYCHA Leased Housing Department Letter dated January 21, 1986 to Stanislaw S.) and therefore he is entitled to his own Section 8 subsidy. In addition, plaintiffs argue that the SDNY Transfer Order referring to both plaintiffs as Section 8 recipients is also proof that they are both entitled to Section 8 subsidies and therefore separate one-bedroom apartments. Finally, Maria S. argues that she was discriminated against based on a false record of a mental disability arising from an incident in 1990 when she and her mother were taken to the psychiatric unit at Woodhull Hospital.

Defendant NYCHA,[7] a public authority created by state law to provide housing for low and moderate income residents in New York City, *see* N.Y. Public Housing §§ 401, 402, argues that its

---

[6] The Court considers plaintiffs' complaint filed on July 2, 2004 as well as their supplemental pleading filed on October 29, 2004.

[7] The defendants Leased Housing Department, Office of Inspector General Fraud Unit and Office of Administrative Hearings are all subdivisions of NYCHA.

11

Section 8 occupancy policy permits only a spouse, registered domestic partner or legally adopted child of an authorized family member to apply to permanently join the Section 8 household and that Stanislaw S., as plaintiff's father, did not qualify to join Maria S.'s household. *See* Declaration of Eleanor Kraskow, NYCHA Housing Assistant (Kraskow Decl.), ¶ 6, Exhibit B, I-K (copy of NYCHA's Occupancy Policy). NYCHA further argues that the Section 8 guidelines do not provide a basis for plaintiffs' belief that they are entitled to two separate subsidized apartments. Kraskow Decl., ¶ 23. Finally, NYCHA states that it was unaware that plaintiff Maria S. was hospitalized in a psychiatric unit in 1990. Kraskow Decl., ¶ 24. Defendant NYCHA argues that it is entitled to summary judgment as plaintiffs have failed to establish that defendant discriminated against them based on familial status, gender or a perceived disability under the FHA.

Having liberally construed plaintiffs' papers and interpreting them to raise the strongest arguments that they suggest, plaintiffs fail to establish a prima facie case of housing discrimination. Plaintiffs' opposition and other submissions in response to NYCHA's motion fail to proffer any evidence in support of their discrimination claims. Instead, plaintiffs merely reiterate in conclusory terms that NYCHA discriminated against them by seeking to terminate Maria S.'s Section 8 subsidy and by failing to provide two one-bedroom apartments to plaintiffs. *See* Pl. Opp., Response and Objections at 1-17; Exhibits A-E.

Plaintiffs point to purported "disputed facts" that they argue defeat defendant's motion for summary judgment. *See* Pl. Opp., Response and Objections at 1-8. However, the "disputed facts" outlined by plaintiffs are not material or relevant to their housing discrimination claims. For example, plaintiffs allege that Anna Sierotowicz (Maria S.'s mother, Stanislaw S.'s wife), who is not a party to this action, was "murdered due to housing problems," that NYCHA continued to pay the

12

Section 8 subsidy although Anna Sierotowicz was deceased, that referring to Stanislaw S. by his name and not as Maria S.'s father gives the impression that he is a "friend or boyfriend," and that NYCHA has discriminated against Maria S. since 1985 by approving her for Section 8 housing although she was "not eligible." Pl. Opp., Response and Objections, 1-7, ¶ 47.

Plaintiffs further argue that their discovery requests were denied and therefore defendant's summary judgment motion should likewise be denied.[8] Pl. Opp., Memo. of Law 1-5, 9. Plaintiffs contend that the "[d]enial [of] available housing means housing discrimination without regards to the reasons for such denials." Pl. Answers and Objections in Response to Defendant's Reply at 11. Plaintiffs are incorrect and misunderstand their burden to withstand defendant's motion for summary judgment. Plaintiffs' "response must ... set out specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e)(2).

Maria S. testified at her deposition that her gender discrimination claim was based on NYCHA's failure to provide two separate apartments for plaintiffs and her belief that an adult female cannot live with her father in the same apartment as they will appear to be living as husband and wife. *See* Deposition Transcript of Maria S. (MS Dep.) 60:14-69:5.

---

[8] The Court notes that plaintiffs did not bring any discovery disputes to the Court's attention or move to compel discovery. *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999). ("[A] party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing (1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." (quotation marks omitted)). Even affording the leniency required for *pro se* litigants, *see Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996), plaintiffs do not satisfy these requirements.

Stanislaw S. testified at his deposition that he was not aware that he had a lawsuit pending against NYCHA, although he acknowledged it was his signature on the complaint and supplemental pleading, *see* SS Dep. 95:17-96:25, 98:20-100:8, 101:2-102:9. Stanislaw S. proffered no evidence to support any claim of discrimination against NYCHA. SS Dep. 79:12-102:25, 110:22-111:6. Instead, Stanislaw S. testified that he was entitled to his own apartment based on his status as a resident alien, SS Dep. 89:6-16, and his evidence that defendant discriminated against him is that he was not given an apartment. SS Dep. 111:2-6.

To the extent that NYCHA sought to terminate Maria S.'s Section 8 subsidy because she allowed her father to reside in her apartment without permission, there is no evidence in the record that NYCHA's action was discriminatory. In fact, Maria S.'s Section 8 subsidy continues to date and she has resided in the apartment at 189 Ross Street with her father while receiving the Section 8 subsidy throughout this litigation.

Moreover, there is no record evidence that Stanislaw S. is entitled to a Section 8 subsidy. Plaintiffs do not dispute that Stanislaw S. resided outside the United States for the period from 1986 through August 2000. Plaintiffs point to incorrect dicta in the Transfer Order referring to both plaintiffs as Section 8 recipients and a letter from NYCHA dated January 19, 1987 to Stanislaw S. notifying him of a visit to the apartment pursuant to Section 8 regulations – to prove that Stanislaw S. was entitled to a Section 8 subsidy. *See* Pl. Answers and Objections in Response to Defendant's Reply at 6, Exhibit B. Even if Stanislaw S. had previously appeared on the Section 8 household certification when he lived with his wife and daughter from September 1984 to 1986, his Section 8 would not continue while he resided outside of the United States for over ten years.

14

In support of her claim of discrimination based on a perceived handicap, Maria S. points to NYCHA's "behavior and action toward plaintiff(s)." Pl. Opp., Response and Objections at 6. Yet plaintiff admits that she has no evidence that NYCHA knew that she and her mother had been taken to Woodhull Hospital for psychiatric treatment or that a conservator had been appointed for her, events which occurred nearly 15 years before this action was filed. MS Dep. 86:8-21. Instead, Maria S. argues that NYCHA treated her like she was disabled by "forcing me to file more documents than ... require[d]." MS Dep. 87:23-25.

Plaintiffs also fail to demonstrate discrimination based on familial status. The FHA defines familial status as applying to families with children under 18 years of age. 42 U.S.C. § 3602(k); *see Soules v. U.S. Dep't of Housing & Urban Dev.*, 967 F.2d 817, 821 (2d Cir. 1992) ("Congress' primary concern was to eliminate direct discrimination against families with children ...."); *Pandozy v. Segan*, 518 F.Supp.2d 550, 556 (S.D.N.Y. 2007) (dismissing claim of familial status discrimination because plaintiff did not allege that his children were under the age of 18). Here, plaintiffs' household does not include minor children; rather, Maria S. argues that defendant has discriminated against her and her elderly father as she claims her father should not reside with her as it is "illegal" and "impermissible." MS Dep. 72:21-73:15.[9] Even assuming that plaintiffs had established a prima facie case, their attempt to ascribe a discriminatory reason to defendant NYCHA's actions is based entirely on speculation and conjecture. *See, e.g., Roffman v. Knickerbocker Plaza Assoc.*, No. 04 Civ. 3885, 2008 WL 919613, at *15 (S.D.N.Y. Mar. 31, 2008). Therefore, NYCHA's motion for summary judgment should be granted.

---

[9] In contrast, Stanislaw S. testified that he cannot reside in an apartment alone. *See* SS Dep. 89:18-93:5.

**B. Sierotowicz v. Los Sures Management Co., 04-CV-3886 (NGG)(LB)**

In Complaint No. 04-CV-3886,[10] plaintiffs allege that defendant Los Sures violated the FHA when, after applying for an apartment on August 23, 2001, Los Sures failed to inform them that they were placed on a waiting list, the number assigned to their application or when they would be called for an apartment. On September 26, 2003, plaintiffs filed a housing discrimination complaint with HUD and received a right to sue letter on October 6, 2003. As a result of the HUD complaint, plaintiffs learned sometime in December 2003, that their application was assigned a number on a waiting list. To date, plaintiffs have not been contacted by Los Sures regarding their application for an apartment. Plaintiffs "charge defendant for its unlawful housing practices as housing discrimination based on race, sex, age,[11] national origin, familial status, including the 'unexplained discrimination' as conspiracy.[12] Compl. at 9. Plaintiffs further allege that "defendant treated plaintiffs as 'ash' or mentally disabled, or deceased because did not advise them about status of their housing application." *Id.* at 10. Finally, plaintiffs argue that "defendants was responsible to provide Maria S. and or both plaintiffs with a separate apartments according to their family status and U.S. Citizenship status. Defendant denied it." *Id.* at 12.

---

[10] The Court refers to plaintiffs' complaint filed on September 3, 2004 and the amended complaint filed on September 27, 2005. The amended complaint alleges *qui tam*, treason and RICO claims against the DHCR; claims which were dismissed by the Court and therefore are not addressed by this R&R. Moreover, the amended complaint does not present any new claims against defendant Los Sures.

[11] "Age" is not a protected class or category covered by the FHA. *See Keeney v. Kemper Nat. Ins. Co.*, 960 F.Supp. 617, 620 (E.D.N.Y. 1997) (FHA does not prohibit discrimination based on age), *aff'd*, 133 F.3d 907 (2d Cir. 1998); 42 U.S.C. § 3604(b), (f).

[12] Plaintiffs' discrimination complaint filed with HUD alleged only "race" and "other - unknown" discrimination by Los Sures. *See* Compl., Exhibit A.

16

Defendant Los Sures alleges that plaintiffs have failed to establish any evidence to support a prima facie case of housing discrimination and further move the Court to "impose sanctions on Plaintiffs for initiating and continuing a frivolous law suit without any reasonable investigation of the facts." Def. Memo. at 2-3.

Plaintiffs argue that defendant Los Sures's policy of not informing applicants about the status of the application until their number has been reached on the waiting list, *see* Affidavit of David D. Pagan, Administrator of Los Sures Management Company ("Pagan Aff.") at ¶ 12, and the use of a waiting list are unlawful housing practices. *See* Pl. Opp., Response and Objections at 3, 5. Plaintiffs further argue that Los Sures offers no evidence that the number assigned to their application was chronologically accurate. Plaintiffs state they only learned of the number in December 2003 after filing the HUD complaint. *Id.* at 6, 10. Finally, plaintiffs allege that they were discriminated against based on race or national origin because they are Caucasians, but defendant serves mostly people from Spanish origin" and that "[d]efendant was motivated by plaintiff's Maria S. false record of mental disability." *Id.* at 7, 13.

Plaintiffs' opposition to Los Sures's motion fails to offer any evidence in support of their discrimination claims based on race, sex, national origin and familial status, *see* Compl. at 9, or based on race, national origin and handicap as alleged in their opposition, *see* Pl. Opp., Response and Objections at 7, 13. Instead, plaintiffs merely reiterate in conclusory terms that Los Sures discriminated against them by failing to offer them an apartment and by keeping a waiting list. Again, plaintiffs fail to establish a prima facie case of discrimination under the FHA.

Unlike in their earlier complaint against NYCHA where plaintiffs had an argument that NYCHA's attempt to terminate Maria S.'s Section 8 subsidy was an adverse action, here plaintiffs demonstrate no adverse action at all. The fact that they applied for an apartment and were placed on a waiting list is insufficient to satisfy the adverse action requirement of a prima facie housing discrimination claim against Los Sures. Plaintiffs fail to show, for example, that housing was available and remained available and they fail to show that Los Sures unlawfully failed to offer them such available housing based on their race, national origin or handicap.

At her deposition, Maria S. testified as to her complaint against Los Sures: "I don't have any evidence [of gender discrimination]"or any evidence to support other bases for discrimination, such as race, national origin, or religion. *See* MS Dep. 488:25-489:10, 490:22-25.

> Q: You also allege that Los Sures discriminated against you because of your family status; is that correct?
>
> A: The same, the same situation. No evidence any other. Really, I did not know what the reason for discrimination. Always I put gender, religion or something, you know, make status. It's only my guessing at that time.

MS Dep. 489:11-19.

> Q: Are you also claiming that Los Sures discriminated against you because of a mental disability?
>
> A: No.

MS Dep. 491:14-17.

Stanislaw S. had even less to offer as he was unaware that he had filed this action against Los Sures. *See* SS Dep. 28:9-25; 37:24-38:13.

Q:  Do you believe that you have been discriminated against by
    Los Sures Management Company?

A:  I think it was discrimination just to promise, promise and
    don't give anything.  I don't know.

SS Dep. 37:18-23.

The establishment of waiting lists are an integral part of seeking affordable housing in cities where affordable housing is sparse but the need is great. The use of waiting lists, alone, is not discriminatory. *See, e.g., Centeno v. Casselman*, No. 05-CV-6489T, 2008 WL 920316, at *2 (W.D.N.Y. Apr. 2, 2008) (public housing applicants placed on waiting list; district court granted summary judgment on FHA claim because plaintiffs failed to established any discriminatory animus). Here, plaintiffs speculate that the number assigned to their application was not accurate, but provide no evidence to support this claim.  Moreover, plaintiffs do not identify any other individuals who obtained apartments from Los Sures who had a higher waiting list number assigned.  Plaintiffs further speculate that defendants offered apartments to non United States citizens. Plaintiffs rely on "[c]onclusory allegations, conjecture, and speculation [which] are insufficient to create a genuine issue of fact." *Niagara Mohawk Power Corp.*, 315 F.3d at 175 (citation omitted).

Plaintiffs fail to establish a prima facie housing discrimination claim against defendant Los Sures.  Therefore, Los Sures's motion for summary judgment should be granted.

### *(A)  Sanctions, Filing Injunction and Attorney's Fees*

Defendant Los Sures also moves pursuant to Fed. R. Civ. P. 11 to sanction plaintiffs for commencing this litigation in bad faith and for attorney's fees.  *See* Def. Memo at 14-17. Defendant's motion is hereby denied.

19

The FHA provides that "the Court, in its discretion, may allow the prevailing party, ... a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c)(2). For Los Sures to be entitled to attorney's fees, it must establish that plaintiffs' action was "frivolous, unreasonable, or without foundation." *Sassower v. Field*, 973 F.2d 75, 78-79 (2d Cir. 1999) (quotation omitted). The Court also has the power to issue sanctions or a filing injunction when "a plaintiff abuse[s] the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive ... proceedings." *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) (internal quotations & citations omitted).

Although plaintiffs have failed to establish a prima facie case of discrimination against Los Sures, the Court denies defendant's motion for sanctions, a filing injunction and attorney's fees. Plaintiffs' *pro se* complaints, albeit misguided, evidence their lack of understanding of the federal law governing housing discrimination claims. Even if true that plaintiff Maria S. has commenced 15 actions in the federal courts since 1999, *see* Def. Memo at 15 n.4., and that she commenced three consecutive actions here, the Court will not, at this time, impose sanctions and/or a filing injunction or award attorney's fees. *See, e.g., Daniel v. Safir*, 135 F.Supp.2d 367, 379 (E.D.N.Y. 2001) ("Although Rule 11 does apply to *pro se* litigants ... the court may take into account the 'special circumstances' of litigants who are untutored in the law.") (internal citations omitted). Sanctions and injunctions are best employed judiciously and narrowly so as to not impede a litigant's access to the courts. Before sanctions or a filing injunction can be imposed, a *pro se* litigant must be "adequately warned of the consequences which may result from this behavior," *Shahid v. Ridgewood-Bushwick Senior Citizens Council*, No. 03-CV-4949, (DGT), 2005 WL 1009549, at *1 (E.D.N.Y. Apr. 26, 2005) (declining to impose sanctions on *pro se* litigant), and be given notice and opportunity to

contest the injunction. *MLE Realty Assocs. v. Handler*, 192 F.3d 259, 261 (2d Cir. 1999).

Here, plaintiffs have received no warnings from the Court and the instant record does not warrant the imposition of sanctions, a filing injunction or attorney's fees. Therefore, defendant Los Sures's motion for sanctions, a filing injunction and attorney's fees is denied. However, the Court hereby warns Maria S. that it will consider appropriate sanctions should she file FHA discrimination complaints in the future.

### C. Sierotowicz v. St. Nicholas Neighborhood Preservation Corp., 04-CV-3887 (NGG)(LB)

In Complaint No. 04-CV-3887,[13] plaintiffs allege that defendant St. Nicholas violated the FHA. Plaintiffs allege that St. Nicholas discriminated against them "based on age, sex, national origin, familial status including 'unexplained housing discrimination and harassment.'" Compl. at at 11. Specifically, Maria S. alleges that on February 19, 1999, she applied for housing with St. Nicholas, and was assigned Log No. 11. *See id.* at 5, 14, Ex. B. Maria S. listed her father Stanislaw S. as a co-applicant, but he did not sign the application. *Id.* In May 1999, St. Nicholas offered plaintiff a two bedroom apartment but Maria S. declined because NYCHA would not transfer her Section 8 subsidy as she was living alone and her father was abroad. *Id.* On June 30, 2003, defendant St. Nicholas offered Maria S. a two bedroom apartment but Maria S. again declined, now preferring to have two one-bedroom apartments for herself and her father who was living with her. *Id.* at 5-6. Maria S. argues that she rejected the two bedroom apartment "because it was against the law ... forcing them to continue cohabitation..." and because defendant did not reveal its location.

---

[13] As previously stated, *see* footnote 10, plaintiffs filed an amended complaint on September 27, 2005, but the amended complaint does not present any new claims against defendant St. Nicholas.

*Id.* at 6. Having declined two offers, St. Nicholas removed Maria S. from its waiting list. *Id.* On September 8, 2003, plaintiffs filed a housing discrimination complaint with HUD and received a dismissal and notice of right to sue on March 11, 2004.[14]

Defendant St. Nicholas moves for summary judgment arguing that plaintiffs do not dispute that they were offered a two-bedroom apartment and have not shown any evidence to support their claim of housing discrimination against St. Nicholas. Def. Memo at 2-5.

Plaintiffs' opposition to St. Nicholas's motion again fails to offer any evidence to support their discrimination claims based on either race, sex, national origin, familial status or handicap. Rather, plaintiffs argue that St. Nicholas should have offered Maria S. a one bedroom apartment or separate one-bedroom apartments for plaintiffs because according to Maria S., they cannot reside together. They further argue that the offers of the two bedroom apartments were "fictitious" because Maria S. was not allowed to see the apartments before she accepted them. *See* Pl. Opp., Response and Objections at 3-5, 9-10.

There is no genuine issue as to any material fact in dispute. Maria S. applied for a two bedroom apartment to be occupied by herself and her father. St. Nicholas twice offered her such an apartment, but Maria S. declined both offers. Therefore, plaintiffs do not satisfy the elements of a prima facie case of housing discrimination as they were not denied available housing based on any discriminatory factor or motive. The deposition transcripts support this conclusion as neither Maria S. nor Stanislaw S.'s testimony provides any basis for any housing discrimination claim. *See* MS Dep. 453:13-455:2, 457:7-12; SS Dep. 110:12-111:6. Similar to their companion complaints,

---

[14] Plaintiffs' discrimination complaint filed with HUD alleged sex, familial status and national origin discrimination by St. Nicholas. *See* Compl, Exhibit A.

Stanislaw S. did not know what St. Nicholas was and had no firsthand knowledge of any purported housing discrimination committed by St. Nicholas. SS Dep. 105-106:19; 110:12-21.

Maria S.'s presumption that she is not "legally" allowed to reside in an apartment with her father, *see* MS Dep. 411:21-412:12, 447:23-25, is not a basis for housing discrimination. Her own application to St. Nicholas for housing requested a two or three bedroom apartment, which is what she was offered. *See* Compl., Exhibit B. Further, Maria S.'s argument that St. Nicholas's apartment offers were "fictitious" because she was not allowed to see the apartments is based purely on conjecture. Therefore, St. Nicholas's motion for summary judgment should be granted.

### D. Sierotowicz v. North Brooklyn Development Corp. & The People's Firehouse, 04-CV-3888 (NGG)(LB)

In Complaint No. 04-CV-3888,[15] plaintiffs allege that defendants North Brooklyn and People's Firehouse violated their rights under the FHA. Specifically, Stanislaw S. alleges that he applied for senior citizen housing with North Brooklyn on December 7, 2001 in response to a local newspaper advertisement seeking applications. Compl. at 4, Ex. B. Stanislaw S. was not offered an apartment, but instead was wait-listed and assigned ID # 1175. *Id.* Separately, Maria S. applied to North Brooklyn for Section 8 housing and also applied to People's Firehouse. *Id.* at 5. Plaintiffs allege that People's Firehouse offered Stanislaw S. an apartment in July 2006 and November 2006, but that the apartments offered "did not fit his recent health problems" and that it did not offer plaintiff Maria S. any available housing. *See* Supp. Pleading at 2-3.

Plaintiffs argue that North Brooklyn's use of a lottery system and waiting list amounts to

---

[15] As previously noted, plaintiffs filed an amended complaint on September 27, 2005, but the amended complaint does not present any new claims against defendants North Brooklyn and People's Firehouse. The Court refers to the complaint filed on September 3, 2004 and the supplemental pleading filed on March 28, 2007.

housing discrimination because the advertisement drew 1206 applications for 32 units thereby "accepting applications from a general public, where most of people are aliens and do not qualify for defendant's federally funded housing units." Compl. at 4, 22. Further, plaintiffs argue that People's Firehouse's offers to Stanislaw S. were not "available" since the apartments were not suitable accommodations for him. Supp. Pleading at 6. As in all the prior complaints, plaintiffs claim that the denial of two separate one-bedroom apartments amounts to housing discrimination because it forces them to live together. Supp. Pleading at 11. On September 8, 2003, plaintiffs filed a housing discrimination complaint with HUD against North Brooklyn and the People's Firehouse and received a dismissal and notice of right to sue on April 30, 2004.[16] Compl. at 5; Ex. A. On March 2, 2007, plaintiffs filed another housing discrimination complaint against People's Firehouse with HUD.[17] Supp. Pleading at 5.

Defendant North Brooklyn admits that it did not offer Stanislaw S. an apartment at Huron Street, but moves for summary judgment arguing that Stanislaw S. fails to establish a prima facie case of housing discrimination. Defendant alleges that Stanislaw S. did not satisfy the income qualifications for the apartment he applied for and further alleges that it had no knowledge of Stanislaw S.'s national origin. Defendant argues that North Brooklyn's use of the lottery and waiting list to fill the 32 available units was permitted and nondiscriminatory. Def. Memo at 4-8.

Defendant People's Firehouse also moves for summary judgment arguing that plaintiffs are

_____

[16] In the first HUD complaint, plaintiffs alleged "other-unknown" as the only basis for discrimination. *See* Compl., Ex. A.

[17] In the second HUD complaint against People's Firehouse, plaintiffs alleged handicap (physical and mental), national origin and age as the bases for discrimination. *See* Supp. Pleading, Ex. D.

24

not members of any protected class and that they were not denied housing. Further, People's Firehouse alleges that they have no record of any housing applications filed by Maria S. Def. Memo at 4-6. Defendant argues that even if plaintiffs had established a prima facie case, they have not provided any evidence of a discriminatory motive. Rather, People's Firehouse argues that they went out of their way to accommodate Stanislaw S. and offered him several apartments which he or his daughter rejected. Def. Mem. at 7.[18]

Plaintiffs fail to establish a prima facie case of housing discrimination against defendants North Brooklyn and People's Firehouse. *See* Pl. Opp., Response and Objections (People's Firehouse); *see* Pl. Opp., Response and Objections (North Brooklyn). Maria S. argues that People's Firehouse's offers were not bona fide offers because Stanislaw S. was seriously ill or abroad and could not accept the apartments. *Id.* at 8. Maria S. also argues that People's Firehouse treated her as if she were mentally disabled by requesting that she complete another application on behalf of her father. *Id.* at 8. Finally, Maria S. argues that she did apply for housing with People's Firehouse. *Id.* at 10-11. She further argues that some of the 1206 applicants who responded to the advertisement were not United States citizens and she alleges that she submitted a joint application with Stanislaw S. for senior citizen housing. *See* Pl. Opp., Response and Objections (North Brooklyn) at 3-5; *see also* MS Dep. 214:12-25, 216:5-22.

Plaintiffs cannot withstand defendants' motions for summary judgment. The record simply does not support plaintiffs' allegations of housing discrimination against North Brooklyn or People's Firehouse. As with the St. Nicholas complaint, Stanislaw S. was offered several housing

---

[18] Defendants North Brooklyn and People's Firehouse also move for summary judgment on the RICO, treason, fraud and other non-housing discrimination claims. Because those claims were already dismissed, the Court need not address them.

opportunities with People's Firehouse and declined them. Plaintiffs have not shown that these offers were not bona fide; rather, plaintiffs speculate that these apartments were not truly available because Stanislaw S. was abroad or that the apartment size was not adequate. Nothing in plaintiffs' opposition, supporting documents or deposition testimony supports plaintiffs' claim of housing discrimination. *See* MS Dep. 228:11-25, 238:23-239:4, 243:12-245:12, 247:3-25, 250:4-251:20, 265:13-266:11, 334:1-335:7, 349:19-350:4, 355:24-356:18, 361:10-25, 362:1-25; *see* SS Dep. 40:3-12, 42:14-43:7, 60:4-61:11.

Plaintiffs' argument that North Brooklyn's lottery and waiting list for the Huron Street Apartments amounts to an unlawful housing practice because some of the 1206 applicants may have been ineligible is without basis. Lotteries and waiting lists are not unlawful housing practices. *See, e.g., United States v. Yonkers Bd. of Educ.*, 635 F.Supp. 1538 (S.D.N.Y. 1986); *Centeno,* 2008 WL 920316, at *2 . Plaintiffs' additional argument that "denial of housing establishes a prima facie case under the Fair Housing Act ("FHA") by providing that plaintiffs applied for housing, and they were qualified, but rejected," Pl. Answer and Objections to People's Firehouse Reply at 2, is incorrect. As previously stated, plaintiffs must "set out specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e)(2), and these facts must be non-speculative and material to the outcome of the housing discrimination claims. The denial of available housing does not, without more, "mean[] housing discrimination without regards to the reasons for a such denial(s)." *See id.* at 3.

Plaintiffs again dispute facts that do not affect the outcome of their housing discrimination claims. It is immaterial, for example, that Maria S. was listed on the application for housing with North Brooklyn since their denial was based on the fact that the number of applications (over 1200) far outweighed the number of available units (32). In fact, at her deposition, Maria S. admitted that

she did not file a separate application for herself. *See* MS Dep. 147:4-5. As to the dispute over whether Maria S. applied for housing with People's Firehouse, she offers no dates or documents to support her claim that she applied to People's Firehouse. *See* MS Dep. 362:17-20. Even if she did apply to People's Firehouse, defendant counters that, with the exception of one building (not located in the area Maria S. was seeking to reside),[19] Maria S. would not be eligible for any of defendant's rental buildings. Def. Memo at 6-7; Def. Reply at ¶¶ 4-6. Plaintiffs' arguments that they were denied discovery material is also insufficient to defeat these motions for summary judgment. This claim, raised in each opposition plaintiffs submitted, is conclusory as plaintiffs do not identify requests that were denied and how the discovery material would have created a genuine issue of material fact. *See Gurary*, 190 F.3d at 43.

There is simply no evidence to support plaintiffs' claims. To survive a motion for summary judgment, plaintiffs must produce some evidence that defendants committed housing discrimination. In each case, plaintiffs have failed to do so. Plaintiff Stanislaw S. admits that he merely signed the complaints his daughter put before him. Therefore, North Brooklyn and People's Firehouse's motions for summary judgment should be granted.

Although plaintiffs' complaints allege discrimination under the FHA and other federal laws, what plaintiffs really seek is suitable low-income housing. Although the Court is aware that low-income housing is scarce, there is simply no federal or constitutional right to housing. *See generally Lindsey v. Normet*, 405 U.S. 56, 74 (1972); *Jaimes v. Toledo Metropolitan Housing Auth.*, 758 F.2d 1086, 1096 (6th Cir. 1985) (no constitutional right to be furnished safe sanitary and decent housing

---

[19] According to deposition testimony, Maria S. wanted to reside in a Polish community such as Greenpoint. *See* MS Dep. 122:19-25.

by housing authority); *Smith v. Town of Clarkton,* 682 F.2d 1055, 1068 (4th Cir. 1982) (no constitutional right to have housing meet a particular standard); *Acevedo v. Nassau County,* 500 F.2d 1078, 1080 (2d Cir. 1974) (no constitutional guarantee of access to a dwelling of a particular quality); *Fair Housing In Huntington Committee v. Town of Huntington, New York,* No. 02-CV-2787, 2005 WL 675838, at *8 (E.D.N.Y. Mar. 23, 2005) ("no constitutional or statutory duty to provide low income housing,"); *Reese v. Miami-Dade County,* 242 F.Supp.2d 1292, 1301 (S.D.Fla. 2002); *Strykers Bay Neighborhood Council, Inc. v. City of New York,* 695 F.Supp. 1531, 1541 (S.D.N.Y. 1988) (no constitutional right to access to dwellings of a particular quality); *Schmidt v. Boston Housing Auth.,* 505 F.Supp. 988 (D. Mass. 1981) (no federal right to low-income public housing). Thus, the denial of housing alone is not a basis for a federal action.

Plaintiffs' allegations that (i) the denial of two one-bedroom apartments from all the defendants, (ii) NYCHA's attempt to terminate Maria S.'s section 8 subsidy, (iii) their removal from housing lists for declining apartments offered by St. Nicholas and People's Firehouse, (iv) their placement on waiting lists at Los Sures and North Brooklyn, do not amount to housing discrimination. Plaintiffs' claims cannot survive defendants' motions. *See Fujitsu Ltd. v. Fed. Express Corp.,* 247 F.3d 423, 428 (2d Cir. 2001) (holding that conclusory allegations cannot defeat summary judgment). Ultimately, plaintiffs have failed to raise any material issues of fact. Even when considering the affidavits, deposition transcripts, exhibits and liberally construing plaintiffs' papers and drawing all reasonable inferences and ambiguities in their favor, plaintiffs fail to establish that defendants discriminated against them under the FHA.

### III.    Other Federal Laws

Plaintiffs also allege claims under the National Housing Act, National Housing Affordable Act,[20] the Civil Rights Act, 42 U.S.C. §§ 1981, 1983 and 1985, the Federal Tort Claims Act and the False Claims Act.  Pl. Opp., Memo of Law at 11.  Plaintiffs cannot rely on any of these federal statutes as the basis for their housing discrimination claims against defendants.  As set forth above, the Court dismissed plaintiffs' amended complaint seeking to raise treason, *qui tam* or False Claims Act claims and other non-housing discriminations claim by Order dated March 27, 2006, Compl. No. 04-CV-3148 (NGG) and Order dated April 8, 2007, Compl. Nos. 04-CV-3886, 3887, 3888 (NGG). The Federal Tort Claims Act, 26 U.S.C. §§ 2671 *et seq.*, and the National Housing Act, 12 U.S.C. §§ 1701 *et. seq.*, waive the federal government's immunity to suit under limited circumstances, none of which apply here since plaintiffs do not name any appropriate federal agencies or allege any facts which would suggest a claim under these statutes.  Therefore, the Court should dismiss these claims.

### IV.    State Law Claims

Finally, to the extent that plaintiffs' complaints allege state law claims against defendants, the Court should decline to exercise supplemental jurisdiction over these claims since all of plaintiffs' federal law claims should be dismissed. *Valencia v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (citing 28 U.S.C. § 1367(c)(3)).

---

[20]  The Court was unable to find any reference to the National Housing Affordable Act in the United States Code.

## CONCLUSION

Accordingly, it is respectfully recommended that the Court should grant defendants' motions for summary judgment. Plaintiffs' complaints should be dismissed. It is further recommended that the Court should decline supplemental jurisdiction over any state law claims. Plaintiffs' state law claims should be dismissed without prejudice. Defendant Los Sures's motion for sanctions, a filing injunction and attorneys fees is denied. It is further recommended that the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from a judgment entered herein would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962).

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. *Marcella v. Capital Dist. Physician's Health Plan, Inc.,* 293 F.3d 42 (2d Cir. 2002); *Small v. Sec'y of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *see Thomas v. Arn,* 474 U.S. 140 (1985).

/S/

_____

LOIS BLOOM
United States Magistrate Judge

Dated:    September 18, 2008
             Brooklyn, New York